per week.　The order to be entered hereon shall provide for the payment of the first-mentioned sum within five days after service of a copy thereof, and such counsel fees and alimony are granted only upon condition that the defendant's stipulation to try this cause on the first Monday of December be filed within three days.　If such condition be not complied with, the motion will be denied.　In the event of the defendant's acceptance of such terms, she should, without delay, apply for a commission to take the testimony of the persons referred to in the moving affidavit.　Settle order on notice.

(43 App. Div. 296.)

## In re WAITE.

(Supreme Court, Appellate Division. Fourth Department.　September 20, 1899.)

PAYMENT—RECEIPT—BURDEN.

　　Where the debtor produces a receipt, duly executed by the creditor, for a sum less than the debt in full therefor, the burden is on those contesting its sufficiency to show that the debt had not been reduced to the sum stated in the receipt to avoid the presumption of payment arising on the production of the receipt.

Appeal from surrogate's court, Jefferson county.

Judicial accounting of Willis A. Waite as executor of the will of Irena M. Waite, deceased.　There was a decree confirming the report of the referee, and the executor appeals.　Reversed.

Franklin Waite died March 8, 1875, leaving, him surviving, his widow, Irena M. Waite, and four sons, Willis A., the appellant, and John R., Austin H., Edward J., and one daughter, Amelia A. Sutton (now Wardwell).　Franklin left a will and considerable real estate and personal property, and in his will gave the residuum of his estate to his widow, Irena M. Waite, and named her and one Richard Huntington executrix and executor of the will.　The will was probated.　Huntington did not qualify.　Irena M. assumed possession of the personal property, with the aid of her son, Willis, the appellant, he volunteering to aid his mother in the management of the affairs of her late husband's estate.　Willis resided the next door to his mother, and had the general management of the estate of the father, and the property of his mother, from the death of the father down to the 16th of January, 1893, when the mother died, leaving her last will and testament, which has been admitted to probate by the surrogate of Jefferson county, of which the appellant was the executor.　No formal judicial settlement of the estate of Franklin Waite was ever made.　An inventory of his assets was prepared by William Grennell, from which it appeared his personal assets amounted to the sum of $14,497.01. There was a money legacy given to his daughter, Mrs. Sutton, of $2,300. The other notes and securities were treated as belonging to his widow.　In 1877, Edward J. asked the appellant for a memorandum of what belonged to their mother of the personal assets, and a statement was made by the appellant showing assets amounting, apparently, to the sum of $18,686.77.　In the schedule of assets delivered by the appellant in 1877 was the note of F. Waite & Son for $9,281.77.　Upon the hearing before the referee a receipt was produced in evidence, executed by Mrs. Irena M. Waite, and is Exhibit No. 26, and reads as follows:

"Received, Adams, March 28th, 1877, of Willis A. Waite, surviving partner of the late firm of F. Waite & Son, six thousand three hundred and sixty-three and 68/100 dollars, in full for all notes and demands held by me as executrix of the estate of Franklin Waite, deceased.

　　　　　　　　　　　　　　　　　　　　　　　　"Irena Waite, Executrix.

"Witness:　E. J. Waite."

The referee only credited the sum of $6,363.63 on account of the F. Waite & Son note, and refused to find that the receipt discharged the appellant from the full amount of the note, and charged the appellant in the account with the sum of $3,226.37 as a balance unpaid and due on the note after the date of that receipt, and interest thereon. The finding in that respect is excepted to by the appellant.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

John Lansing, for appellant.
Watson M. Rogers, for respondent.

HARDIN, P. J. On the 28th of June, 1897, the referee's report was presented to the surrogate's court of Jefferson county, and the contestants applied for an order confirming the same, and the executor opposed such confirmation, and also moved to set the report aside. On that occasion exceptions to the referee's report were filed to his decision and findings, and various requests to the surrogate to find were made, which he declined to receive and pass upon, although he subsequently granted an order confirming the referee's report. The referee found there was a balance in the hands of the appellant of $6,910.52 to be paid by the executor under the terms of the will, less the costs and expenses of the accounting, which he advised should be allowed to both parties out of the fund. The referee accompanied his report with an opinion. Before the referee the contestants claimed that the executor should account for the F. Waite & Son note of $8,438.16 in full. The appellant claimed he should not be held for any part of it. The receipt which has been referred to in the statement of facts was produced upon the trial, and its execution duly proved by the appellant, and the evidence indicates that it was signed by Mrs. Waite, and witnessed by her son Edward. The referee did not give full force and effect to the receipt. It may be said that the evidence does not very clearly indicate what Mrs. Waite did with the $6,363.63 which was paid to her according to the tenor of the receipt. In order to give validity to the receipt, it was not necessary that the evidence should indicate what disposition she made of the money. The referee has charged the appellant with the difference between $6,363.63 and the amount which was due upon the note, and has, therefore, charged the appellant with the sum of $3,226.37. We think the burden was upon the contestants to show that the note had not been reduced to the sum mentioned in the receipt in order to avoid the legal presumption which arises from the production of the receipt. Boughton v. Flint, 74 N. Y. 476.

The receipt purports to be in full of all sums of money that were then due upon the note, and in Patterson v. Ackerson, 2 Edw. Ch. 427, it was said: "Where a party claims against the face of such receipt, it is for him to prove his prior demands, and it is not obligatory upon the holder of the receipt to show previous payment independent of the receipt." In Danziger v. Hoyt, 120 N. Y. 190–195, 24 N. E. 295, it was said: "It must be assumed that no greater sum than that paid and receipted was conceded to be due." We

think the evidence does not satisfactorily indicate that the item of $3,226.37 was chargeable to the appellant, and that the finding of the referee in that regard is not satisfactorily supported by the evidence.

Several other items are made the subject of criticism in behalf of the appellant. We are inclined to think that the evidence was sufficient to support the conclusions reached by the referee in respect to them. For the error in allowing the item of $3,226.37, we think the decree should be reversed, and the proceedings remitted to the surrogate's court for further determination.

Decree of the surrogate's court reversed, with costs to the appellant, payable out of the fund, and the proceedings remitted to the surrogate's court for further determination. All concur.

NASH, J. I concur in the opinion that the referee erred in not giving effect to the receipt of March 28, 1877, given by Irena M. Waite, executrix, to Willis A. Waite, according to its terms, and that, therefore, the decree should be reversed. But I am of the opinion that at the death of Irena M. Waite all claims for money had and received by Willis A. Waite on her account more than six years prior to that time had become barred by the statute of limitations. Willis A. Waite was the agent of Irena M. Waite in settling the estate of her husband, Franklin Waite, of whose will she was the executrix. Franklin Waite died March 8, 1875, and by an arrangement made by Willis with his mother he undertook the settlement of the estate for her. Willis was in partnership with his father at the time of his death under the firm name of F. Waite & Son, and it appears that as surviving partner he settled the affairs of the firm. On the 27th of March, 1877, as surviving partner, he took the receipt of his mother for $6,363.63, in full of all the F. Waite & Son notes and demands held by her as executrix. It appears that as agent Willis collected the securities belonging to the estate of Franklin Waite, and invested the avails for his mother, and paid moneys to her, and that he continued to transact his mother's business until she died, in January, 1893. The referee finds that "Willis received these funds belonging to his mother under an arrangement that he was to manage them for her; that he was to keep them invested for her, and let her have such sums as she needed or requested, from time to time." If he was to keep her moneys invested, and from time to time let her have such sums as she needed, it would not constitute a trust. But there is no evidence in the case from which it can be properly found that Willis was to receive the funds belonging to his mother, and manage and keep them invested for her. The only evidence in the case bearing upon this question is the testimony of John R. Waite. He says that in a conversation with Willis just before their father's will was probated Willis said he did not want Huntington to act as executor. "I said that mother was not competent to do this business, hardly, and he said that he would do the business; that, of course, it would be a good deal cheaper, as he would not charge anything." That is all the evidence there is as to the arrange-

ment. It appears, as already stated, that Willis went on, and settled the estate, and continued to act for his mother as her agent in the transaction of her business, until she died. He fully accounted for all of his transactions with his mother from January, 1881, to the time of her death, having rendered an account conceded to be correct. There is no evidence in the case upon which an account of matters prior to January, 1881, between Willis and his mother, can be stated, nor is there any attempt to state such an account. The referee states an account with annual rests, in which he charges Willis with the avails of the securities which he finds were either paid to Willis or which he ought to have collected, beginning in 1875 and bringing it down to the date of Mrs. Waite's death, computing interest on the amount received and paid each year, the result of which method of stating the account charges Willis with interest on yearly balances; the first period being 17 years from January, 1876, to January, 1893, the next 16 years from January, 1877, and so on to the time of Mrs. Waite's death. Under no conceivable circumstances can the statute of limitations be avoided in a suit by a principal against an agent when the cause of action accrued 17, or 16, or any number of years more than 6, prior to the commencement of the action. The cause of action against an agent accrues at the time the money of the principal is received and ought to have been paid over or applied to the use of the principal. No demand is necessary. Carr v. Thompson. 87 N. Y. 160; Mills v. Mills, 115 N. Y. 80, 21 N. E. 714; Middleton v. Twombly, 125 N. Y. 520, 26 N. E. 621; Wood v. Young, 141 N. Y. 211, 36 N. E. 193; Yates v. Wing, 42 App. Div. 356, 59 N. Y. Supp. 78. The finding of the referee is that Willis received these funds belonging to his mother under an arrangement that he was to manage them for her, keep them invested, and let her have such sums from time to time as she needed or requested, and that "her securities which came from her husband's estate were taken by Willis, and collections made from time to time of principal and interest, and with the avails investments were made by him from time to time down to Mrs. Waite's death. When she wanted money, she called on Willis for it, and he paid it to her." If we take this view of the case, we find that all of the earlier securities with which Willis is charged in the account stated by the referee were collected, and the avails invested in new securities in the name of Mrs. Waite, or paid over to her, or converted by Willis to his own use, prior to January, 1881, the beginning of the account he has rendered; none afterwards, for his account back to that time was conceded to be correct. Any claim which Mrs. Waite may have had for moneys collected by Willis, and not invested, or paid over to her, or for moneys, if any, which he converted to his own use, was, under the above authorities, barred by the statute long prior to her death. The referee says a trust or agency may be inferred from the acts of the parties. It is unimportant whether the relations of the parties be termed a trust or an agency, as the trust arising out of an agency is not such as to prevent the running of the statute. Budd v. Walker, 113 N. Y. 637, 21 N. E. 72; Mills v.

Mills, 115 N. Y. 80–86, 21 N. E. 714. The referee seemed to be of the opinion that section 410 of the Code prevented the running of the statute. No demand was necessary to entitle Mrs. Waite to maintain an action. Willis was liable at any time to an action for all moneys in his hands which he failed or neglected to invest, except such moneys as were necessary to supply his mother's needs, and those she could have demanded at any time. When a demand is necessary, that section provides that the time within which the action must be commenced must be computed from the time when the right to make the demand is complete, except, where the right grows out of the receipt or detention of money or property by an agent or trustee, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends. It must be held that Mrs. Waite had, or ought to have had, knowledge of the moneys in the hands of Willis which remained uninvested during the 12 years from January, 1881, to the time of her death, in January, 1893. In any view that may be taken of the case, I think it is quite clear that any claim against Willis for moneys which came to his hands prior to January, 1881, is barred by the statute of limitations.

Decree of surrogate's court reversed, with costs to the appellant, payable out of the fund, and the proceedings remitted to the surrogate's court for further determination.